## THURMAN v. STATE OF INDIANA.

[No. 270S36. Filed October 14, 1970. No petition for rehearing filed.]

*Malcolm G. Montgomery,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter E. Bravard, Jr.,* Deputy Attorney General, for appellee.

HUNTER, C.J.—Appellant was charged by affidavit filed in the Vanderburgh Circuit Court with the crime of robbery. Trial before a jury resulted in a verdict of guilty to the offense of theft and a sentence to the Indiana Reformatory for a period of one (1) to ten (10) years.

On this appeal, appellant assigns as error the overruling of his motion for new trial. In that motion appellant alleges that the verdict is contrary to law and not sustained by sufficient evidence.

Briefly, the facts as viewed most favorably to the state are as follows: on the morning of August 9, 1969, at approximately 3:00 A.M. a Negro male, later identified to be appellant, entered the lobby of the Hotel Vendome in Evansville, Indiana, ostensibly for the purpose of procuring change for a five dollar bill. When Sandra Thompson, the desk clerk, opened the cash drawer to get the change, appellant reached over the registration desk and began taking money from the drawer. Teresa Adkins, the hotel operator, observed the foregoing and protested, whereupon appellant told the girls to keep quiet or he would shoot them both. Appellant then went around the registration desk and pulled the cash drawer out of the register thus dumping the rest of the money on the floor. After picking up the bills lying on the floor, appellant ordered Sandra to leave with him, pulling her by the arm; when she resisted, appellant struck her in the mouth, knocking her to the floor. Immediately following this altercation appellant left the premises, returning briefly to retrieve a top coat which he had laid on the desk.

The police were informed of the robbery and a description

obtained from those present at the time of the robbery was broadcast over the police radio. Within minutes appellant was taken into police custody and held until the afternoon of the same day at which time he was identified in a police line-up as the perpetrator of the crime.

Appellant's first contention is that the evidence is insufficient to sustain a verdict of guilty in that appellant was not sufficiently identified as the person who committed the theft. It is contended that the line-up at which appellant was identified was basically unfair and implanted in the minds of the state's witnesses that the defendant was the same person as the suspect who entered the Hotel Vendome. To support his allgation that the line-up procedures were inherently suggestive, appellant points to the fact that he was the only individual in the line-up with an "Afro" haircut. All three witnesses to the crime had stated that the offender had worn his hair in the "Afro" style.

We note parenthetically that the line-up was in other respects conducted in such a manner as to preserve the rights of the appellant. Counsel was appointed and present at the time of the line-up; all suspects were dressed similarly and were of the same color and approximate height and weight; the witnesses brought to the police station were separated prior to identification and were not told anything concerning the suspects in the line-up or even that the police had reason to suspect that one of those appearing was the guilty party; all suspects were asked the same or similar questions for purposes of voice identification; and finally, the line-up was conducted within a day of the alleged offense.

Since counsel was present at the pre-trial line-up the problem before the court is not one of appellant's sixth amendment right to counsel but rather is a question of whether his right to due process in the criminal proceeding against him has been infringed upon. As was recognized by the

United States Supreme Court, this ground of attack upon a conviction is independent of a right to counsel claim and must be dealt with accordingly. *Stovall* v. *Denno* (1967), 388 U. S. 293, 18 L. Ed. 2d 1199. As was stated by the court in *Stovall*, ". . . a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it."

Although such a statement affords this court little guidance as a practical matter in the resolution of the precise question before us, it nevertheless seem readily apparent that the United States Supreme Court would consider any pre-trial confrontation which is so unnecessarily suggestive and conducive to irreparable mistaken identification to be a violation of appellant's right to due process.

The resolution of this factual issue is best accomplished by a hearing in the trial court, for it is there that an exploration of the circumstances surrounding the confrontation can be accomplished. Such a hearing was had in this case and under the particular facts surrounding the confrontation there illicited we are not inclined to hold as a matter of law that appellant's rights have been violated.

The extreme care with which the line-up was conducted has already been indicated. Although we have no doubt that in some cases the fact that the suspect is the only individual in a police line-up with a distinguishing hair style may have some suggestive impact on the witnesses present for purposes of identification, we feel that its effect was sufficiently mitigated here. Two of the witnesses had more than ample opportunity to observe appellant during the commission of the crime in an area well lighted. The line-up confrontation was staged within twenty-four hours after the robbery when the image of the guilty party was still fresh in their minds. Appellant's contentions to the contrary notwithstanding, neither

of the two witnesses who had an opportunity to view the party face-on expressed any doubts about the accuracy of appellant's identity.

Although we do not attempt to negate the suggestive aspect of the differing hair styles, we do feel that that particular objection was overcome by the other facts in the case. At some point a line must be drawn for it cannot be seriously maintained that the element of suggestability can be completely removed from identification procedures. Surely one of the most suggestive procedures is one in which no pretrial confrontation takes place at all and a witness is asked at trial, months later, to identify the guilty party; the mere fact that the defendant is sitting behind the defense table clearly suggests that the state believes him to be the culpable individual. Should that be held violative of the right to due process? Clearly not. As to a line-up, what results where the suspected person in the line-up is wearing a mustache, beard or has a slight physical deformity or disfiguration? Needless to say each case requires that the trial judge determine under the facts of the particular case and from the totality of circumstances whether the confrontation procedure utilized was so overtly suggestive as to derogate from the defendant's right to due process. Such was not the case here. Consequently, we hold that the evidence was sufficient in respect to appellant's identity.

Appellant's second contention is that the evidence failed to establish that he was able to form a criminal intent to commit theft by reason of his being in a drunken condition at the time of the alleged crime. The question of capacity to form a specific criminal intent is one for the trier of facts and not this court. *New v. State* (1970), 254 Ind. 307, 259 N. E. 2d 696; *Hunter v. State* (1965), 246 Ind. 494, 207 N. E. 2d 207; *Mattingly v. State* (1957), 236 Ind. 632, 142 N. E. 2d 607. Here, although there was testimony that the appellant was arrested in a drunken condition, there was ample evidence from which the jury could infer that he

had sufficient capacity to formulate the requisite intent. As pointed out by appellee the evidence most favorable to the state indicates that appellant retained sufficient control over his motor reflexes and thought processes to be able to ask for change for a five dollar bill, to reach over the counter and take money from it, to move around the counter and pick money up from the floor, to threaten Sandra Thompson with physical harm and to knock her to the floor. Further, the evidence shows that appellant had the presence of mind to return shortly after his departure for the purpose of retrieving an overcoat which he had left behind. That such factors may be considered when passing on the question of a defendant's mental state at the time the crime is being committed was established by the case of *Hunter* v. *State, supra.* We therefore hold that the evidence is sufficient to establish appellant's capacity to form the specific intent to commit the crime of theft.

For all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, DeBruler, Givan and Jackson, JJ., concur.

NOTE.—Reported in 262 N. E. 2d 635.